PETER TJADEN, APPELLEE, v. JOHN D. SMITH ET AL., APPELLEES: JAMES F. CROWLEY, TRUSTEE, APPELLANT.

FILED MAY 15, 1934. No. 28931.

*Tibbets, Canadáy & Hewitt,* for appellant.

*James D. Conway, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and REDICK, District Judge.

REDICK, District Judge.

This action is brought by Peter Tjaden, holder of one of the bonds secured by a $15,000 mortgage on some lots in Hastings, Nebraska, to foreclose said mortgage. A large number of defendants were named as payors of the bonds, owners of the real estate covered by the mortgage, and holders of other mortgage liens. The several mortgages were not all upon the same property but overlapped each other and presented many complicated questions of priority which were disposed of by the district court and are not now in controversy before us, with one exception hereafter referred to. We are concerned only with the rights of three litigants in two of the mortgages, one for $15,000, dated April 1, 1919, and one for $18,000, dated December 28, 1926, and the controversy is between the trustee in bankruptcy of Hoeppner & Uerling, a copartnership, on the one hand, and Charles Callahan and Rus-

sel W. Shields, representing distinct interests, on the other.

Callahan filed a petition of intervention claiming to be the holder of one of the bonds secured by the $15,000 mortgage, in the sum of $3,000, and joined in the prayer of the plaintiff for foreclosure. Shields filed a petition of intervention claiming to be the holder of another $3,000 bond as collateral security for a debt owing him by Hoeppner & Uerling in the sum of $2,000, and joined in the prayer of the plaintiff for foreclosure.

Callahan had left his bond with Hoeppner & Uerling for collection, and Shields had received his bond after maturity, and in view of these facts the district court held that Callahan's bond was paid in full, and Shields' bond to the extent of $2,000, by means of a payment of $5,000 made by the mortgagor to Hoeppner & Uerling, and to that extent denied them foreclosure. For the remaining $1,000 the court allowed Callahan a lien for $600 and Shields a lien for $400. The correctness of these holdings is not before us.

The trustee filed a petition of intervention claiming to hold $7,500 in bonds secured by the $18,000 mortgage, $4,000 in absolute ownership and $3,500 as collateral to a $1,268.87 indebtedness of one Louis Traut to Hoeppner & Uerling; also the sum of $5,665 for interest coupons on the various mortgages, paid by Hoeppner & Uerling and not repaid by the mortgagors. After trial in the district court, a decree was rendered finding and adjudging that Callahan and Shields were not entitled to participate in the foreclosure of the $15,000 mortgage except to the extent of $1,000 split between them, as above stated, and that there was due the trustee upon the $18,000 mortgage for the two notes owned by them, with interest, the sum of $4,623.24, and as assignee of the sum due Louis Traut, $4,375, but these amounts were decreed subject to the claims of the other bondholders; that the trustee was also entitled to a lien for $5,353 on account of coupons paid by them. It was further decreed that Hoeppner &

Uerling had an interest to the extent of $3,482 in the claim of Louis Traut, but that such interest was subject to the claims of Charles Callahan for the sum of $2,088, and of Russel W. Shields in the sum of $1,392. The effect of this decree was to transfer the unpaid portions of the bonds held by Callahan and Shields from the $15,000 mortgage to the $18,000 mortgage, which furnishes the principal ground of complaint of the trustee, who files his appeal in this court. Callahan and Shields are the only appellees who appear and file briefs.

The trustee assigns six errors for reversal and they will be taken up in their order.

(1) That the court should have allowed 10 per cent. interest on the bonds held by the trustee in connection with the $18,000 mortgage. The bonds provided for 10 per cent. interest after maturity, and the point is well taken.

(2) The court erred in holding the indebtedness on said bonds a subordinate lien to that of other bondholders under the same mortgage. This point is also well taken; there seems no good reason for distinguishing between the different bonds.

(3) The court erred in assigning the trustee's interests in the Traut bonds to Callahan and Shields. The bonds held by Callahan and Shields were under the $15,-000 mortgage and were held to be paid, to the extent of $5,000, and they were given liens under that mortgage for the remaining $1,000. They made no claim of subrogation in their pleadings, and we know of no rule which would allow them any preference over general creditors. It might be that in a contest purely between them and Hoeppner & Uerling, and under proper pleadings, equity would allow the subrogation; but we think the court was in error in allowing it against the trustee. Callahan and Shields are simply holders of claims against Hoeppner & Uerling for conversion—are creditors to that extent; but their position is not superior to any other creditors.

(4) The court erred in its computation of the prin-

cipal amount due on the coupons paid by Hoeppner & Uerling for which they were not reimbursed by the mortgagor. The court computed the amount at $5,353, but an examination of the record shows that Hoeppner & Uerling paid coupons on the $7,000 mortgage in the sum of $1,425, on the $25,000 mortgage, $2,865, and on the $15,000 mortgage, $1,375. This totals $5,665, which should be allowed the trustee.

(5, 6) The court erred in refusing to allow 10 per cent. interest on the amount of coupons paid by Hoeppner & Uerling after maturity and from the date of the decree. The decree of the court in this particular is correct. With reference to these coupons the allegations of the cross-petition that the receiver "owns" coupons attached to the $7,000 bonds, $1,425, that he is the "owner and holder" of those attached to the $25,000 bonds, $2,865, and a *recital* that Hoeppner & Uerling purchased those attached to the $15,000 bonds, $1,375, are denied by some, but not all, of the holders of the bonds, and the only evidence offered in this connection was that of Uerling who speaks of them as "items of interest advanced." We think the evidence insufficient to sustain a finding that Hoeppner & Uerling purchased the coupons, but that they simply advanced the amount for the mortgagors expecting reimbursement within a reasonable time; and when they took up the coupons, presumably at maturity, they were paid and ceased to function as current obligations. The relation of debtor and creditor was established between the mortgagor and Hoeppner & Uerling to the extent of the moneys advanced by the latter, for the repayment of which the law implied a contract on the part of the mortgagor with interest at the legal rate, in the absence of a contract for a greater rate. We think the rate of interest is governed by section 45-101, Comp. St. 1929, for the loan or forbearance of money.

The decree of the district court is modified and affirmed, and the cause is remanded, with directions to correct the decree in accordance with this opinion.

AFFIRMED AS MODIFIED.